JOHN DIXON
(a) of Jamaica, 30 july, 1162, had executed 15 bonds for payment of money to James Hunter, at successive yearly payments, with interest at six per cent from the days of payment, and for securing principal and interest had executed a mortgage of an estate called Salem in Jamaica. The bonds and mortgage were deposited with Hibbert and Jackson residing in Jamaica attorneys of James Hunter, the principal and interest due hy the 1, 2, 3, 4 and 5, bonds had been received by James Hunter, no part of the principal or interest due by the other 10 bonds was ever paid to the executors of James Hunter; hut Hibbert and Jackson had received the whole of the principal money and interest due by the 6 bond, and part of the principal money and interest due by the 1 bond, which they retained, and on which R. Hibbert, their reprsentative, refu-seth to account for interest.
25 day of april, 1185, Adam Hunter the heir, residuary legatee, and one of the executors, of James Hunter, entered into the following agreement with Daniel L. Hylton :
1 Memorandum of agreement with Daniel L. Hylton, esquire, ‘ the subscriber, executor to the will of James Hunter, deceased, ‘ bargaineth to assign over to the said Hylton all his right and ‘ title in nine bonds, granted by John Dixon, esquire, of the-island of Jamaica, for the sums under mentioned, viz.
Jamaica currency
1 bond, dated 30 july, 1162, payable 1 august, 1 ⅝75, for 100
1 ditto ditto 1 august, 1716, 700
í 1 ditto ditto 1 august, 1171, 100
‘1 ditto ditto 1 august, 1718, 700
‘ 1 ditto ditto 1 august, 1719, 7 00
*1 ditto ditto 1 august, 1780, 700
‘1 ditto ditto 1 august, 1781, ’ 700
‘ 1 ditto ditto 1 august, 1182, 100
11 ditto ditto 1 august, 1783, 1741 1 3
1 also his right in a mortgage, granted to James Hunter, by the £ said Dixon, on an estate, called Salem estate, in Hanover, for- ‘ merly the property of John Campbell, esquire, in said island, 1 as collateral security for payment of said bonds, in considera- * tion whereof, the said Hylton agrees to pay the said Hunter ‘ the sum of 5500 pounds, current money of Yirginia, in gold * and silver, at the rates now current, to. say, guineas, &c. ; at *197 ‘the following terms of payment, viz: 18331. 6s. 8d. six ‘ months after the date of assignment; 1833 1. 9s. 8d. fifteen ‘ months after date, and 18331, 6s. 8d, in twenty seven months ‘ after date ; for which respective sums the said Hylton shall ‘ execute bonds with such security as the said Hunter shall approve. Adam Hunter. Daniel L. Hylton. Richmond 25 ‘ april, 1785. N. B. in case any part of the within mentioned ‘ bonds have been paid to messieurs Hibberts and Jackson, of ‘ Kingston, the attornies of the said James Hunter, the said ‘sums to be refunded to the said Hylton. Adam Hunter. ‘Daniel L. Hylton, witnesseth in presence of W. Foushee.’
27 day of april, 1785, Adam Hunter and Abner Vernon, the two executors of James Hunter, executed a bond, in the penalty of 2U000 pounds, of current money of Virginia, payable to Daniel L. Hylton and to William Hylton, in Jamaica.
To this bond, after a recital, ‘ that John Dixon on the 30 day ‘ of july, 1762, had executed 14 several bonds to James Hunter, ‘ 9 of which still remain due and unpaid, and amounted, in the ‘ whole, to 14794 1. 2s. 6d. Jamaica currency, to be discharged ‘ by payment of 73471. Is. 3d. at several days of payment, as ‘ would fully appear by reference to the bonds, and all which ‘ bonds, together with the interest accruing thereon, still re- ‘ mained due and unpaid ;—that John Dixon had executed to ‘ James Hunter, as a further security for payment of the moneys ‘ due by the bonds, a mortgage for the estate of John Dixon, ‘ called Salem, in Hanover, in Jamaica, formerly the property ‘ of John Hodges Campbell;—and that it had been agreed be- ‘ tween Adam Hunter and Abner Vernon, on the one part, and ‘ Daniel L. Hylton, and William Hylton, on the other part, that ‘ they Adam Hunter and Abner Vernon, would, by their attor- ‘ ney to be made by them for that purpose in Jamaica, for a ‘ valuable consideration, which they acknowledged themselves ‘ to have received, transfer and assign to Daniel L. Hylton, and ‘ William Hylton, as soon as their attorney should be required ‘ so to do, all the before mentioned obligations, with the interest ‘ which had accrued thereon, as also the mortgage aforemen- ‘ tioned,’ was annexed a condition, ‘ that if Adam Hunter and ‘ Abner Vernon should comply with the above mentioned agreement, then the bond should be void.’
21 day of june, 1785, Daniel L. Hylton executed a bond, in tbe penalty of 20000 pounds, of current money of Virginia, payable to Adam Hunter and Abner Vernon.
To this bond, after a recital, ‘ that Adam Hunter had sold to ‘ Daniel L. Hylton a debt, which was due from John Dixon, of ‘ Jamaica, on account of John Campbell, formerly of Spotsyl- *198 ‘vania, in Virginia, and, to secure the payment of that debt, ‘ had executed, 30 day of july, 1762,14 bonds, 5 of which had ‘ been paid to James Hunter, the other 9 amounting to 7317 1. ‘lls. 2d. of Jamaica currency, and that Adam Hunter, with ‘ consent of his co-executor, had, for the consideration of 5500 c pounds of current money of Virginia, to Adam Hunter paid ‘ by Daniel L. Hylton, made the sale to him ;—-and that, as there ‘ was a risque to run in collecting the money due by the 9 bonds, 4 with the interest thereon, Daniel L. Hylton, had agreed to have ‘ no recourse against the estate of James Hunter, or against the ‘persons or estates of his executors,’ was annexed a condition, ‘ that, if Daniel L. Hylton should abide by that agreement, and ‘ should not resqrt to the estate of James Hunter, in case any ‘ part or the whole of the 9 bonds should not be collected, nor ‘resort to Adam Hunter and Abner Vernon, in ease of such ‘ failure, then the bond should be void.’
On the day when this latter bond was executed, the following wtitten statement was signed by Adam Hunter and Abner Vernon:
Bichmond, june 21, 1785.
‘ Statement of nine bonds from John Dixon, of the island of ‘Jamaica, to James Hunter, esquire, deceased, sold messieurs ‘ William Hylton and Daniel L. Hylton, viz.

*199

1 day of august, 1785, Daniel L. Hylton, with Francis Eppes and John Tayloe Griffin, his sureties, executed three bonds, each in the penalty of 38661. ISs. 4d. with conditions for payment of 1833 1. ⅛. 8d. of current money of Virginia—one the 16 day of february, 1786, another 16>day of november, 1786, and the third 16 day of november, 1787.
William Hylton, then in Jamaica, had demanded from the forenamed R. Hibbert interest for the money before mentioned to have been received by those whom he represented ; to which, demand he gave this written answer : ‘Kingston, 19 november, ‘ 1785, i inclose you a sketch of the account, balance 9201. 14s. ‘ lid. which as i have never made use of it, and have been con- ‘ stantly ready to pay it, i shall notallow one six pence interest ‘ on it, even if no legal representative appears for twenty years ‘ to come, so far from it, i think an allowance ought to be made ‘ to me, for the risk i have run, in preserving them from five ‘ hurricanes, and for such a length of time, our state of bonds ‘ must be right, because it agrees with the bonds themselves, ‘ and mortgage, no. 7 has due upon it 5061. 14s. with interest ‘from 26 july, 1777, and no. 8 to no. 14 are for 700 pounds ‘each, and are intire, as is no. 15, which is for 11091. 17s. 7d.
‘ copy of account.

*200 ‘«ugust 1 }principal n°. 15 due this day 1109 11 1 (b) 1815 14 V
Adam Hunter, to whom the state of the account immediately preceding had been Communicated on the 27 of february, 1787, consented to make a deduction for the supposed difference between the raontfy due by the bonds, assigned to Daniel L. Hyl-ton and William Hylton, and the money realy due from the obligor in those bonds, out of the money to be paid for them by the Hyltons; which difference was erroneously stated, by one to whom the parties referred the matter, to be 1055 pounds, current money of Virginia ; and Adam Hunter accordingly indorsed credit for 527 1. 10s. on the second bond, and the same on the third bond, given by the Hyltons.
Adam Hunter, having discovered the error, mentioned it in a letter to D. L. Hylton, who in answer thereto, by letter, dated 18 of September, 1788, assured Adam Hunter every mistake should be rectified, and the correction of this mistake was referred by the partes no less than three times, as if it had been a question of difficulty, first to Henry Banks and William Hay, then to Jerman Baker and John Marshall, and lastly to George Weir.
After this affair was adjusted,the executors agreed with D. L. Hylton not to commence suits against him, for some time, on pretense that the assignment of the bonds and mortgage, and the power to collect the money due thereby, were insufficient.
A few days before this time expired as to one of D. L. Hyltons bonds, in the county court of Henrico suits were commenced, upon all of them, against him, who suffered judgements to pass, without claming the deduction for the 1055 pounds.
Afterwards, in the same court in chancery, he brought a bill for an injunction, which was granted, in answer to that bill, the executors of James Hunter admitted to be just the clame for a deduction, such as, at that time, they thought right, a motion was made to dissolve the injunction, which was nevertheless continued for the whole.
The cause being afterwards removed, by certiorari, into the high court of chancery, the defendants, by a suppletory answer, retracted*their consent in the former answer, for reasons which will be stated in the following
OPINION and DECREE:
‘ This cause came on the last term, and again this 25 day of may, in the year of our lord 1793, to be heard on the bill, *201 answers, exhibits, examinations of witnesses, and report of'the commissioner, persuant to the order of the 28 day of may, in the year 1791, with exceptions to the report by the plaintiff, and was argued by counsil: on consideration whereof the court doth now deliver its opinion, under the articles controverted between the parties, as followeth :
ARTICLE I.
A deduction of 1055 pounds from the 5500 pounds, to pay which, at three installments, the plaintiff had given his bonds ; for which', deduction he clameth a credit, alleging that the Jamaica debts assigned did not amount to so much money as the parties supposed at the time of the agreement; and excepteth to the commissioners report for disallowing the dame, the plaintiff in the references, among the exhibits, first to Henry Banks and William Hay, and afterwards to Jerman Baker and John Marshall, supposed the sum of the Jamaica debts, agreed to be assigned, to be 9561 1. 6s. 2d. and the deficiency to be 179 1. 8s, 5d. and in the reference to George Weir, also among the exhibits, supposed the sum of debts, agreed to be assigned, to be the same, but the-deficiency to be 821 ]. 6s. 8d.
Which ever it was, the deduction could not be 1055 pounds, if the former were the deficiency, 9561 1. 6s. 2d. : 5500 1. :: 779 1. 8s. 5d. : 448 1. 7s, if the later were the deficiency, 9561 1. 6s. 2d. : 5500 1. :: 821 1. 6s. 8d. : 472 1, 9s. 2d, and the deficiency ought to have been 1833 pounds, to intitle the plaintiff to the 1055 pounds.
Yet he persisteth in the clame, and would justify it, in his remarks on the commissioners report by propounding the question, and giving to it the answer, following ; ‘if 5500 pounds is to produce 9596 pounds, what must 821 pounds produce ? answer, ‘Jamaica currency 1055 pounds/ saith he ; supposing the deficiency now to be 9596, instead of 9561 ]. 6s. 2d. ; on which is observed: first the four terms in the question and answer are not, as they ought to he, geometrical proportional ; for the product of the extreme terms is not equal to the product of the mean terms, secondly, the fourth term, the deduction, is Jamaica currency ; whereas the deduction claimed in Virginia currency, thirdly, the first term is Virginia currency, and the others are Jamaica currency : whereas the first ought to have been of the same denomination with the third, fourthly, if the question propounded by the plaintiff be resolved by the problem, by which questions of that kind are usually resolved, that is, by dividing the product of the second and third terms by the first term, and if the deficiency had been more than it was sup *202 posed to be, the assignors would have been bound to make good more than 9596. for example : if the deficiency had been 1000, instead of 821, the defendents must have made good 0340 : for 5500 : 9596 :: 1000 : 1744, and 9596—1000 + 1744= 10340. if the deficiency had been 2000, instead of 821, the defendents must have made good 11085, instead of 9596 : and so on ; the money to be made good increasing as the sum of the debts assigned decreased.
But enough hath been said on the ratio, by which the deduction ought to be adjusted, and to have said any thing ofit was unnecessary, if the opinion, the foundation of which shall now be explained, namely, that the plaintiff is not intitled to any deduction, be correct, every part of the agreement made the 25 day of April, 1785 which Adam Hunter had bound himself to perform, was effectually performed by him. first he assigned his right and title in John Dixon’s nine bonds, and also in one other bori(|, which, although not enumerated in the list, which forms part of that agreement, was transferred by assignment of the mortgage, to Daniel Laurence Hylton ; secondly, the sum of the principal moneys, which had been due by the ten bonds, exceed the 7347 1. Is. 3d. which were supposed by the agreement to be due on the nine bonds ; and thirdly, the money due upon the first of the nine bonds, that is number 6, and part of the money due upon the second of the nine bonds, that is number 7, which had been paid to Hibbert and Jackson, the attorneys of James Hunter, was refunded to D. L. Hylton, that is, was paid for his use, and by his authority, to his brother William Hylton.
But the representative of Hibbert and Jackson refuseth to account for interest of the money so received by them—for this interest the plaintiff clames the credit, which he would have deducted from the 5500 pounds, the principal money due by his own bonds. *
He must be intitled to it if intitled to it at all, either by the agreement of 25 of april, 1785, or some other agreement posterior to it.
1. Not by the agreement of 25 of april, 1785,—by that Adam Hunter bargained to assign his right and title in certain bonds ; if he had a right and title to interest upon the money which had been due .by those bonds, or any of them, the plaintiff, by the assignment had the same right and title ; and therefore might have recovered the interest from those who were accountable for it. if Adam Hunter had not a right and title to interest on the money, which had been received by Hibbert and Jackson, tbe attorneys of James Hunter, the plaintiff had no right *203 or title to the interest; because by the agreement it was not bargained to be assigned to him ; but Ada11! Hunter was bound by the agreement only that, in case any part of' the bonds had been paid to Hibbert and Jackson, the sums should be refunded to Daniel L. Hylton ; not that they should be refunded with interest ; so that by the agreement of 25 of april, 1785, the plaintiff is not intitled to the deduction clamed.
II. Is he intitled to it by any posterior agreement?
1. In the condition of the bond, executed by Hunters executors, 27 of april, 1785, obliging themselves to make the assignment, is contained a recital, that of John Dixons bondsto James Hunter, nine, amounting to 1347 1. Is. ,3d, with the interest accruing thereon still remained due and unpaid, these words,
‘ with the interest still remain due and unpaid,’ are understood by the plaintiff to refer, as well to the interest on the bonds, of which one had been wholy, and the other partly, discharged by payments to Hibbert and Jackson, as to the interest on the other bonds, but this exposition is rejected, because it is inconsistent with the agreement, made two days before ; an agreement which doth not appear to have been set aside by the parties, but, on the contrary, is supposed to be the agreement recited in the same condition ; and to be the agreement in execution of which this bond was granted ; and therefore to be still in force.
The inconsistency of the exposition is manifest; for the agreement supposed part of the bonds might have been paid to Hibbert and Jackson, because it bad, in that event, provided that the sums which had been paid to Hibbert and Jackson, should be refunded to Daniel L. Hylton, not that more than the sums paid to Hibbert and Jackson should be accounted for to Daniel Laurence Hylton.
The words, ‘ all which bonds, together with the interest accruing thereon still remain due and unpaid,’ in the recital, therefore, ought to refer to the agreement, and, congruously with it, to be understood thus : all which bonds, together with the interest accruing thereon, still remain due and unpaid, notwithstanding any act of the obligors ; and if, by act of Hibbert and Jackson, any of the bonds had been paid, in that case, the sums paid to them should be refunded.
The plaintiff, in his remarks, gaith ‘ in case Hibbert had re*
‘ ceived the whole, and witheld or failed in any respect to pay it ‘ to the plaintiff, the defendents were obliged to make it good.’ if by, ‘ the defendents were obliged to made it good,’ be meaned, the defendents must have refunded, or were obliged to make good, the whole which-Hibbert had received, the proposition is *204 admitted to be true ; but the plaintiffs inference, that the defen-dents must; not only have refunded what Hibbert had received, but have paid interest for it, is denied to be deducible from that proposition.
2. By a statement, 21 june, 1785, to which are the signatures of Adam Hunter and Abner Vernon, the nine bonds with interest are supposed to amount to 9oBl 1. 6s, 2d. to this statement, as well as to another paper hereafter to be mentioned, the plaintiff is believed to allude, where, among the questions, preliminary to his remarks upon the commissioners report, he propounded the following : ‘ have the defendents not covenanted ‘ and warranted to make a title to a certain interest, specifying a ‘ fixed sum to be due therein, at the time of.agreement, with a ‘ condition annexed to refund whatever was short of this sum ?’ to which question the answers are : first, the statement con-taineth no express terms by which the defendents covenanted to do any thing, or warranted any thing; and seemeth designed, not to make a new agreement, as to the amount of the debts assigned, but only to give the plaintiff the best account, which the books of the defendents testator enabled them to give, of the bonds, the money due by which he or they had not received. and secondly, the warranty, which might be perhaps implied in the term, ‘ sold,’ in the statement, if a formal agreement had not been made, ought not to be further obligatory on the defendents than the agreement on the 25 of april preceding, the extent of which hath been defined : because this very sale was contracted by that agreement; because the same agreement is mentioned in the condition of the plaintiffs bond to the de-fendents, of the same date with the statement, and appeareth thereby to have been considered by the parties as a pact not invalidated, nor altered ; and because by the terms of the agreement recited in the condition of that bond, of the 21 of june, 1785, compared with the agreement of 25 of april, the defen-dents were liberated from obligation to make good any deficiency, refund any money, or allow any deduction, more than the money which Hibbert and Jackson had received, and that money, not with interest.
3. A paper, introduced by the plaintiffs counsil at the hearing last term, called an extract from the record of an assignment, enrolled in the secretarys office of Jamaica, seemed'relied upon to prove, that f the defendents had covenanted and warranted a ‘ title to a certain interest, specifying a fixed sum to be due on ‘ the bonds, at the time of assignment.’ this paper is not authenticated, and therefore not allowed to be a proper exhibit; but, if it were a proper exhibit, it would not prove the money, actualy assigned, to beso much as the defendents admit it to be.
*205 ° -¾ 20 ® a § g © £⅛ ⅛, cr* o’ © tz? 3 £0 O ti ⅛ ^ ⅞ cr-o Si 3 ot rr ⅛ Q-X © JT vr © OC OQ © © fe , - <£> ^ § ⅛ © r +* 2 2 o &jd o a P- W (C ¶ « ^ ® '-S 3 © ® ⅞. ⅛ s. O i~-» O ae" a "⅛ Toq 2. IJSap ' ® ^ ^ a a ¾ J w> ® ;.S a 7 bO ° i rC ⅛ • 0) O « ⅛ x¿ ; o o : g N J ’o —1 ) ⅜ t— I fc. US J ® ⅛ • 3 '-£ \ 3 ^ § > a • c3 ,c ⅜ T3 o fc~, a rO O © a h s'-® ¿I o ms » ¾ ® a '«gjf ⅜ '? s ^ <P ⅛ ^ 1 § - a |'S ® — .2 ⅜ ¾ -a -⅛ ® « <x> 0 0⅛¾⅜-⅛ -f ’fl g jg ®¾ 12 ® a • •' a ® a ⅛ »B S' rr a ⅛ ® ?» ⅛ ⅜ O0 '"⅞ ® ® 3“ o ~ O o -⅛ <-► -s 2 QE 3"* r— © a> — • P-“0 © cr* © *-r- -⅜ © 9 rí, r-a © cT ST.J1 *•-** ,, , © © 2 31 P-00 5 * ⅛⅛9° ■ oo: 00 c3 I—r- l-f* «T+- ?-*■ © P © © p P , ■ 0"f P— P 3 ⅛§ ^ O- “ ® to a P D 2 c-b ⅛ B » S ¾ ⅞ a ⅜ © GC ‘-*0 , ■ CP ® ¾⅛, cr ¿⅛ 3 P © ^ ►⅞ jr*-* 3 © © & ■jr* ^ Pa B g g 5 ^7 ⅞ ® S' ⅞- X S» a ⅛ o ¾ g ⅛5⅜ 3 ” ®
® ~s ⅞ m —‘ 5 © _ *2 © c ¾ O 2 cr p- ©^ c • O rrf • 3 D 2 2 p- 3 sr cr o © © 3^ © H 2. | a> c- ^ cS '’CO® » . ⅝ ac 3 O © _ “ © ⅛ g_ g- ® ⅜ 3 a ® ⅛ 05 3i ® 3 ® 3 2 1 S» » ® 2-B" O Ü ® B ⅞ -i <W h ® g p rt- , P-⅜ ⅜ © © © p- © 3 2T-P «< ¿5 3 3 Í-» P- ^ © S® © P-⅛? © © 2** 3 3b £. © 2. 3 * ® © £J“. '2.3 ⅞ © © ^ a? S' S' T) ^ erg ' 3- g. < g_ H ® E» ®* ^ 85 * ® ca ⅞ ® ⅛ o <T S'
ARTICLE II.
The defendents clame a credit for 62 1. 16s. 4d. of current money of jamaica, the money due by the ten bonds, whereof the plaintiff had the benefit, by so much exceeding the amount of the money, supposed to be due by the nine bonds, enumerated in the agreement of the 25 april, 1785. and if the foregoing opinion be correct, the defendents seem in ti tled undoubtedly to this credit, reduced to Virginia current money, by the ratio of that agreement, with interest.
ARTICLE III.
Exception by the plaintiff to the commencement of interest on his bonds, at periods too early, that is, at the times when, by the conditions of the bonds, the principal moneys were payable. the legal title to interest generally commenceth when the time, limited by the contract, for payment of the principal ex-pireth. by the agreement of the 25 of april, 1785, the terms of payment were for one third of the 5500 pounds, six months, for another third,fifteen months,and for the remaining third, twenty seven months, after the date of assignment, the defendents, as appeareth by a recital in the condition of their bond to the plaintiff, executed two days after, had agreed that they would, by their attorney, to be made by them for that purpose in Jamaica, transfer and assign to the plaintiff and William Hylton the bonds and mortgage, so soon as their attorney should be required so to do. the day when the assignment was made doth *206 not appeal', but the plaintiff in bis bill admitteth it to have been made before the 16 day of august, 1785 ; and probably the business was done the first day of that month, because, on this day, the plaintiff executed his three bonds, for payment of the consideration money by instalments, at about a fortnight more than the before limited terms of payment, to shew why interest should not be computed from those times, the plaintiffs objections urged before the commissioner, and contained in the remarks upon his report, may be resolved into two. the one, that the powers given by the defendents to their attorney in Jamaica were defective ; and the first assignment ineffectual; to which, either of two several answers is thought satisfactory : first, the instruments, committing the powers, and evidencing the assignment,are not exhibited,and therefore the court cannot decide whether they were exceptionable, or not; and to shew them to have been exceptionable, otherwise than by bis own word, was incumbent on the plaintiff, secondly, the plaintiff, having accepted the instruments, and having executed bonds for payment of the consideration money, by which the defen-dents legal title to interest became perfect; the defendents having done every thing required of them, towards perfecting the plaintiffs right to the money due in Jamaica ; and the plaintiff not appearing to have sustained any, or but inconsiderable, damage by the pretended defect of powers, or insufficiency of the assignment; to suspend the defendents right to the whole interest of the Virginia money seems asked with no grace, in a court of equity, by the plaintiff, who during that whole time, hath been receiving interest, at six per centum, for all the Jamaica money to which he was intitled ;—a court of equity, with whose principles such a rigour seemeth inconsistent, and which would rather>,amand the plaintiff to his remedy by action at common law. The other objection, urged by tbe plaintiff, to the commencement of interest is founded on the endorsements on the plaintiffs second and third bonds, and is thought to be utterly groundless from the terms of the endowments themselves.
ARTICLE IV.
Expenses incurred by the plaintiff in authenticating the second powers and assignment, for which the plaintiff clameth a credit.,and expenses incurred by the defendents in procuring the execution of those second powers and assignment, for which the defendents clame a credit: the rejection of the former and the admission of the later by the commissioner are approved : because the insufficiency of the first powers and assignment doth *207 not appear, as bath been observed, and ought to have been made to appear, before the plaintiff can justly clame the one, or the defendents ought to be burthened with the other.
ARTICLE V.
a O ; * - to G> a -+ oí £ «-⅛** T «< P , ^ 0 <D cu © O ⅛ X © &> D - CD O CD c+CD O « ¾ ⅜ j2 S- © Q o C3 ^ c ¿á CD ⅛ vT CQ O CD o 0 V ® £L • ® ¾ -⅜ ⅛⅞ » o < < <rh ~¡ P- ® ® s cc CD 95 B ⅛ - ^.03 CD D — t * p fcD r ■ y4 t. * S :i,(C =; SO er+- ' -J ^ P* .Ef £L t 2. 3 ; cd" & ^ g" ⅜. 5£ ro S' ® 00 ⅞ o , M su 2L“ ®, ® ⅜*--P —, CT* q" rj- CD CD Í-. ⅛ go4® ■ ¾ S CD & P $ ® £- 2 ⅛ C3 r¿¡ ' i £ 55 H-rf ;• aq zl . c-oc <⅛_ m ¿z s- f—■ o © p-⅜- c w if?5.
ARTICLE VI.
Costs of suit-on the third bond, with which the plaintiff, excepting to the report, allegeth he ought not to be charged because the action was commenced a few days before the time, when it ought by the agreement, endorsed on the bond, to have been commenced, this exception it disallowed, because, if the commencement of the action were premature, the plaintiff might have pleaded it, and he waved it, by not pleading it, and because the money was confessedly due before the judgement was rendered.
Therefore the court, upon the whole matter, disallowing the .* plaintiffs exception to the report, and approving the same re-i; port corrected, and by the supplements thereto accommodated to > the preceding opinion, doth adjudge order and decree that the «injunction, to stay execution of the defendents judgements, be perpetual, as to the whole of the first judgement, and as to so 1 much of the second judgement as «excedes 9481. Os. 3d. and f the costs, with interest upon 936 1. 8s. 2f, from the 24 day of I november, in the year 1791, and that the said injunction he dis-i solved, as to the said 9481. Os, 3d. with costs, recovered by \ the second judgement, with interest upon the said 9361. 8s¿ 2J | from the 21 day of november, in the year 1791, and also be dis-i solved, as to the third judgement, which was to be discharged I by the payment of 1833 1. 6s. 8d. with interest thereon, from ’the 16 day of november, 1787, and the costs; and that: the plaintiff, who appeareth to have complained against the defen-dents without just cause in every instance, except where they controverted the credit clamed by him for his order on James and Macomb, and who appeareth to have delayed the defen-dents unrighteously, do pay unto the defendents the costs expended by them in their defence, both in the county court, and. in this court.’
*208 The court of appeals, before whom the cause was carried by the plaintiff, on the 31 day of October, 1734, delivered the following
OPINION and DECREE.
‘ The court is of opinion that there is no error, in so much of the said decree, as disalloweth the clame of the appellant, to suspend the commencement of interest on his bonds, contrary to the terms of them, on account of the supposed delay in the transfer of the subject purchased, nor in the allowance to the appellee of half the expenses only in negotiating the bill on Shoolbred and Moody, nor in awarding the appellant to pay all costs in the suits at law, nor in allowing the appellant a credit for his order on James and Macomb ; but that the said decree is erroneous, so far as it disallows the clame of the appellant, for a deficiency, in the subject assigned, of what it was stated to be, at the time of the contract, and allowing the appellee for a supposed surplus in the transfer, beyond the said first state ; on which subject this court is of opinion that there was a deficiency in the assignment of what it was stated to be of 14351. 11s. 7d. from which, deducting the sum of 9231. 14s. lid. received of Hibbert by the appellant, which is all the appellant ought to be accountable for on that occasion, there remains a balance of 5141. 16s. 8d. for which, with interest from the 1 day of april, 1785, the appellant is intitled to a credit against his bonds, without recourse to any rule of proportion for increasing or diminishing the sum, so as to throw either gain or loss upon the appellant; that the said decree is also erroneous, in this, that the court disallowed the appellants expenses, in the execution of the second power, and allowed the appellee his expenses, on that occasion, since neither of the parties appearing to be more in fault than the other, in producing the defect in the first power, the expenses of both ought to be allowed, and being added together equal y borne by the parties ; and also in this, that the appellant is decreed to pay the whole costs in equity, whereas being relieved partly in the said court of chancery and more extensively in this court, he ought to recover his costs in equity, as well in the said court of chancery, as in the county court; and that the account, stated by the commissioner, so far as it is inconsistent with this decree, ought to be set aside, and stand as to the residue, therefore it is decreed and ordered, that the said decree, so far as the same is above stated not to he erroneous be affirmed ; that the residue thereof be reversed and annulled, and that the appellee, out of his'testators estate, in his hands to be administered pay to the appellant his costs by *209 him expended in the prosecution of bis appeal aforesaid here, and it is ordered that the cause be remanded to the said court of chancery, for that court to have the account between the parties reformed, and a decree entered, according to the principles of this decree.’
EEMAEKS.
1. The principal question controverted by the parties was, whether James Hunters executors were bound, by their contract, to account with Daniel Laurence Hylton for the interest of that money, which Hibbert and Jackson had received, and for which they refused to pay interest whilst they retained it? which question was resolved into this other, in the language of the court of appeals, whether a deficiency was in the subject assigned by the executors to D. L. Hylton?
• The judge of the high court of chancery, in a lengthy perhaps taedious discussion, which preceded his decree, endeavored to prove the executors not bound, or in other words, to prove no deficiency.
This is refuted by the court of appeals, after mature deliberation, in the following terms :
» The court is of opinion that the said decree is erroneous, so far as it disallows the dame of the appellant for a deficiency, in the subject assigned, of what it was stated to be, at the time of the contract * * on which subject, this court is of opinion, that there was a deficiency, in the assignment, of what it teas stated to be, of one thousand dec. ’ that is, this court is of opinion the said decree is erroneous, in disallowing a clame, which this court is of opinion ought to have been allowed.
This specimen of refutation seemetli not less happy than conipenduous. 1, it*is oeconomical, for by it are saved the expenses of time and labour requisite, in a dialetic investigation, which is sometimes perplexed with stubborn difficulties. 2, it is a safe mode; for fallacy, if it exist in the refutation, cannot be detected. 3, it prevents unimportant discussion ; for a detection of fallacy would be nugatory, the doom of judges in appeal being fate.
2. The allowance of a surplus to the executors is confessed to be erroneous, if the subject assigned, instead of being superabundant, were deficient.
3. The rule of proportion, at a recourse to which in the reversed decree, the reversing decree seems to glance, as if it had been impertinent, was not introduced, as is there supposed, for increasing or diminishing the sum so as to throw either gain or loss upon the appellant, which would have been truly ridiculous, *210 but upon the supposition that the appellant was intitled to any allowance for a deficiency, to shew the arithmetic, by which he clamed for that deficiency so much as to 1055 pounds, to be false, and for that purpose a recourse to the rule of proportion was not impertinent,
4. In defence of that part of the decree, which disallowed the appellants expenses in execution of the second power, and allowed the appellee bis expenses on that occasion, and which is condemned of error, the author of that decree propounds for examination these questions : 1, whether any proof hath been exhibited of defect in the first power? 2, whether every purchaser doth not prepare the acts by which the right to the thing purchased is transferred ? 3, if the purchaser, who hath accepted a transfer, and bound himself to pay the purchase money, discovering a defect in the transfería g act and desiring it to be supplied,ought not to pay the expenses incured thereby ?
5 In many cases, determined by the high court of chancery, the plaintiff, partly successful!, hath recovered only part of the costs, in some hath recovered no costs, and in some hath been condemned to pay all the costs ; and the present judge of that court will feel grievous distress, if he is to understand these words in the reversing decree : the appellant being relieved partly in the court of chancery he ought to recover his costs in equity, to he the canon, prescribed for his regulation in awarding costs in fixture, from which no circumstance can justify a deviation—• however that the plaintiff is intitled to his costs-in this case, as much as he is intitled to the extensive relief afforded to him by the court of appeals, the judge of the h. c. c. will admit without liaesitation.

 In one of the exhibits called James Dickson.

 here is a miscasting.